UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. <u>21-20109-CR-KING</u>

**UNITED STATES OF AMERICA**

vs.

**JIHAD MUHAMMAD ALI,**

    **Defendant.**
    _____/

## <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM</u>

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to defendant Jihad Muhammad Ali's ("Defendant['s]") Objections to the Presentence Investigation Report ("PSI") [ECF No. 46] and also files a Sentencing Memorandum.

Although the Government addresses each objection in turn below, as a threshold matter, the Court is not sentencing a 17-year-old, as the Defendant alleges. Instead, the Defendant was an adult ISIS fighter for several months before his ultimate surrender on March 17, 2019 to coalition forces. This fact, in addition to the arguments set forth below, lead to the inevitable conclusion that the Court should sentence the Defendant to a guideline sentence of 60 months' imprisonment.

    A.  **<u>Government's Response to Defendant's PSI Objections</u>**

The PSI correctly calculated the Defendant's total offense level of 35 and Criminal History Category of VI, resulting in a guideline range of 292 to 365 months imprisonment. The Government and the Defendant, however, negotiated a plea agreement in which the Defendant's

total sentencing exposure was limited to 60 months' imprisonment, which is the correctly calculated guideline range. This negotiation was based on the same mitigating circumstances the Defendant now raises, namely his reduced age and the negative influence of his father.

While the Court should indeed consider those mitigating circumstances when determining the Defendant's sentence, nothing negates the fact that the Defendant participated in ISIS religious and military training and became an ISIS fighter who, as an adult over the age of eighteen, conducted ISIS combat missions. Such missions included the Defendant firing his AK-47 assault rifle at coalition ground and aircraft forces at various times. In other words, nothing about the Defendant's mitigating circumstances warrants the guideline departures the Defendant now seeks.

Importantly, even if the Court were to grant the Defendant's objections, the Defendant's guideline range would remain unchanged, as the Court would have to depart 17-levels from the Defendant's current total offense level of 35, in order to impact the Defendant's guideline range, which would remain at 60 months' imprisonment. The Government addresses each objection in turn below.

**1. Defendant Does Not Qualify for a Diminished Capacity Departure**

Defendant first argues that he qualifies for a "diminished capacity" departure pursuant to U.S.S.G. § 5K2.13, as he claims to suffer from "significantly reduced mental capacity" due to his "age and following the instructions of his Muslim father."

First, § 5K2.13 expressly directs the Court to not depart below the guideline range if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence . . ." Here, as the parties agreed in the Defendant's factual proffer [ECF No. 33], the Defendant's offense undoubtedly involved actual violence, as he fired

2

his AK-47 weapon at coalition forces in Syria.  Therefore, a departure based on "diminished capacity" is inapplicable here.

Second, the Sentencing Guidelines define a "significantly reduced mental capacity" as someone who has "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  There is nothing in the record to support such a conclusion and such a claim flies in the face of the nature of the offense.  In fact, as will be shown at the sentencing hearing, there is ample evidence proving that the Defendant had the full capacity to control his actions and behavior.  Such evidence includes the Defendant's conversations with his mother, where the Defendant brags about the numerous ISIS battles he has participated in, as well as the Defendant's Facebook posts that include ISIS propaganda and the Defendant's intentions to become a martyr for the ISIS cause.  Furthermore, contrary to the Defendant's assertions about his father's influence over him, the Defendant spent years apart from his father in Syria, where the Defendant was operating on his own, exercising free will, evincing the exact opposite of a "significantly reduced mental capacity."  The Defendant's capacity was therefore not diminished and the Court should impose a guideline sentence.

**2. Defendant Was Not A Minimal Participant in Providing Material Support to ISIS**

The Defendant was convicted of conspiring to provide material support to ISIS and therefore seeks a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2 as a "minimal participant" in the overall ISIS conspiracy.  As discussed previously, however, the Defendant did much more than just conspire to help ISIS.  Rather, the Defendant became a hardened ISIS fighter who, as an adult, fought on ISIS's behalf.

U.S.S.G. § 3B1.2 provides a 4-level reduction for individuals who were a "minimal participant[s]" in the criminal activity. The adjustment applies to those "substantially less culpable than the average participant." *See* U.S.S.G. § 3B1.2 Application Note 3(A). There are few greater roles in the "overall ISIS conspiracy" than taking up arms to defend the terrorist organization. The Defendant was therefore not a minimal participant in the conspiracy, but instead played a central role in helping protect and secure the ISIS caliphate.

Furthermore, U.S.S.G. § 3B1.2 Application Note 3(B) states: "If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable that a defendant whose only conduct involved the less serious offense." That is precisely what occurred here – the Defendant only pled guilty to conspiring the provide material support to ISIS, rather than the substantive offense of materially supporting ISIS, which the Defendant agrees he committed. This plea agreement resulted in the Defendant's guideline range being reduced from 292 to 365 months imprisonment to 60 months imprisonment, and therefore the Defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

For example, a defendant could be convicted of conspiring to provide material support to ISIS simply by agreeing to share media propaganda online to recruit ISIS fighters, or by agreeing to travel to Syria to fight on ISIS's behalf, although the individual does not actually share propaganda or actually travel to Syria and take up arms. Without question, the Defendant "is not substantially less culpable" than such an individual. Instead, the Defendant is more culpable as he was an ISIS fighter who fired upon coalition forces on ISIS's behalf. The Defendant is

therefore not a "minimal participant" in the ISIS conspiracy and the Court should overrule the Defendant's second objection.

### 3. Defendant Should Participate in Mental Health Treatment

While not an objection that warrants a departure from the guideline range, the Defendant also raises the issue that he is only amenable to mental health treatment through his family's imam and specifically is not amenable to "mental health treatment administered by American Psychiatric Association-licensed or approved individuals in America." The Government certainly agrees that a primary issue of the Court's concern should be the Defendant's mental health given the Defendant's actions and experiences. The fact that the Defendant does not consent to mental health treatment by licensed professionals is therefore concerning and such concern is exacerbated by the Defendant's condition that he will only receive treatment from his family's imam.

The Government raises this significant concern because based on information and belief, the Defendant's family's imam is Nazim Muhammad, an individual at the heart of Trinidad and Tobago's Islamic extremist movement.[1] Furthermore, the Defendant's claim that an imam is the only individual qualified in Islamic religion to administer mental health treatment is simply incorrect, as numerous providers treat Muslims for mental health, including the Institute for

---

[1] *See* Cottee, Simon, *Black Flags of the Caribbean: How Trinidad Became an ISIS Hotspot* ("Imam Nazim Mohammed, the religious leader at the center of the ISIS network in Trinidad and Tobago" and "At the center of the network was imam Nazim Mohammed. Not only was he a leading spiritual authority within the network, as well as a revered and feared veteran of the 1990 attempted coup; he also presided over his own quasi mini-caliphate on the settlement he owns in the rural town of Rio Claro in the southeast of the country, and where he still lives. It was from here that the majority of the Trinidadian ISIS mujahideen came or spent some time.") (March 25, 2021); News Americas, *The ISIS Phenomenon In Trinidad and Tobago* (stating that 70% of the 130 Trinidadians who left Trinidad to join ISIS in Syria and Iraq and have lived on or near the 30 houses on Imam Nazim Mohammed's settlement, including 15 members of Nazim Mohammed's family) available at https://www.newsamericasnow.com/caribbean-news-trinidad-and-tobago-isis (accessed July 16, 2021).

Muslim Mental Health, which states "the majority of Imams are not trained in mental health." *See Islam and Mental Health* (available at https://muslimmentalhealth.com/islam-mental-health/).

In addition, the Defendant also argues that Post Traumatic Stress Disorder ("PTSD") "is not considered a mental condition in the Islam religion." It is therefore perplexing that the Defendant will only allow for treatment by his family's imam, who apparently does not believe PTSD exists. Instead, what the Defendant's worrisome condition reveals is an adherence to Islamic extremism that should give the Court significant pause when determining the Defendant's ultimate sentence.

### 4. Defendant Does Not Qualify for "Safety Valve" Reduction

U.S.S.G. § 5C1.2 is expressly limited to offenses under "21 U.S.C. § § 841, 844, 846, 960 or 963." As the Defendant was not convicted of any such offenses, a safety valve reduction is inapplicable.

## B. Government's Response to Defendant's Sentencing Memorandum

### 1. District Court Cannot Award Credit under 18 U.S.C. 3585(b) at Sentencing

Defendant argues for the Court to award the Defendant credit for time served at a Syrian detention facility pursuant to 18 U.S.C. 3585(b). In *United States v. Wilson*, however, the Supreme Court unequivocally rejected that argument, stating "Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing." 503 U.S. 329, 333 (1992). Instead, it the Attorney General who must "compute the credit under § 3585(b)." *Id.* In other words:

> After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. See 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term

imposed"). To fulfill this duty, the BOP must know how much of the sentence the offender has left to serve. Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant.

This long-held principle has been upheld as recently as this year in *United States v. James*, and thus applies here. 842 F. App'x 436, 438 (11th Cir. 2021) (citing Wilson to find that § 3585(b) does not authorize a district court to award time-served credit at sentencing). Time-served credits are therefore not within the Court's purview and should not be considered in rendering the Defendant's sentence.[2]

### 2. There is No Evidence to Support Defendant's Claims of Syrian Prison Conditions

As discussed above, the Court cannot award credit for time-served by the Defendant in Syria. This is equally true for awarding "doubt credit for time served" that the Defendant seeks. It is simply not within the Court's purview under 18 U.S.C. 3585(b).

To the extent the Defendant is arguing that the Court should grant a variance pursuant to 18 U.S.C. 3553(a), there is no evidence or precedent before the Court to support such an argument.[3] First, despite the Defendant's claims, the Defendant was 18 years old while he was in Syrian custody. Second, as an FBI Special Agent can testify to at the upcoming sentencing hearing, the Defendant did not have any visible signs of trauma when the Defendant was turned over to United States law enforcement.

---

[2] If the Defendant so chooses, he can later challenge the BOP's determination of time-served credit (with the same arguments he inappropriately attempts to raise here) by exhausting his administrative remedies within the BOP and thereafter by seeking judicial review. *See United States v. Coates*, 775 F. App'x 669 (11th Cir. Aug. 21, 2019).

[3] The Defendant does not cite a single case support his argument and the undersigned has been unable to find a case where double counting for time-served occurred.

7

Third, when interviewed on August 6, 2019, by FBI personnel, while still in Syrian Defense Force custody, the Defendant appeared in good health. Furthermore, during the interview the Defendant requested to see a prison doctor due to having stomach pain upon eating or drinking. FBI personnel thereafter confirmed with SDF that a prison doctor would visit the Defendant that same day. Two days later, the Defendant reported to FBI personnel that he had seen the prison doctor and "was feeling better."

Finally, the conditions and circumstances experienced by the Defendant while in Syrian custody are beyond remedy here and are a direct result of the Defendant's decision to travel from Trinidad to Syria and become an ISIS fighter. The Court should therefore reject the Defendant's claims for a variance and sentence the Defendant to a guideline sentence.

### 3. Defendant's Alleged Cooperation Does Not Merit the Court's Consideration

The Defendant argues that the Court should consider his purported cooperation in fashioning the Defendant's sentence. Unfortunately, the Defendant has routinely rejected opportunities to cooperate with the Government and therefore should not receive any benefit from the Court as a result.

### C. Government's Sentencing Memorandum

Given the seriousness of the offense under the 18 U.S.C. § 3553 factors, the Government recommends a guideline sentence of 60 months' imprisonment. As stated previously, two of the mitigating factors which the Defendant raises are valid, but those mitigating factors were already taken into account by the plea agreement in this case. The Defendant is therefore facing a significantly reduced sentenced because of his young age at the time he travelled to Syria and the negative influences of his father. Even considering those mitigating factors, however, the Court

should find that a 60-month term of imprisonment is appropriate given the seriousness of the offense, and the need for deterrence.

### 1. Seriousness of the Offense

One cannot overstate the seriousness of the Defendant's conduct in support of ISIS, whose atrocities are well documented. As stated in the Defendant's Factual Proffer [ECF No. 33], the Defendant travelled with his family from Trinidad and Tobago to Syria to join ISIS. Upon entering Syria, the Defendant participated in ISIS religious and military training and thereafter joined the Anwar al-Awlaki katibah or battalion. From that point forward, the Defendant conducted combat missions as an ISIS fighter to support the terrorist organization. His actions included firing his weapons on behalf of ISIS against U.S.-led coalition forces and against a local tribe opposed to ISIS.

Instead of the meek individual with diminished mental capacity that the Defendant seeks to portray, the Defendant's own voice messages and social media postings reveal an individual who fully committed to the ISIS cause and wholeheartedly supported their actions. For example, in voice messages to his biological mother back in Trinidad, the Defendant routinely spoke with pride about being an ISIS fighter and discussed attacking the enemy, despite indicating that not all Trinidadians in Syria are fighters. More specifically, in one voice note, the Defendant states that "just the other day we tried to do an attack . . . we swam across the river and we got through . . . it was good . . . it was an experience." The Defendant also talks about overseeing a group of fighters with their own house, who are getting ready to "jazz up and hope to hit [the enemy] again."

The Defendant's social media posts are also indicative of an individual fully engrossed in the ISIS cause. Those social media postings include ISIS propaganda and routinely speaks of

Martyrdom in a positive light, indicating that the Defendant was willing to die for his ISIS beliefs.

For example:





These posts were often met with great support and encouragement from the Defendant's social network, further indicating the Defendant's pride in his ISIS related activity.[4]

Therefore, the Defendant's continuous and willful conduct, supported ISIS's heinous crimes and for his actions, the Defendant should receive a guideline sentence of 60 months' imprisonment.

2. Deterrence

The need for general deterrence is manifest, as material support of a terrorist organization is unquestionably among the most serious crimes prosecuted in federal court. Imposing serious

---

[4] Aneesa Waheed, daughter of imam Nazim Mohammed discussed above, responds to the Defendant's post of martyrdom by saying "Subhanallah" which roughly translates to "Praise to God." Ms. Waheed was sentenced to 20 years' imprisonment by the Central Criminal Court in Baghdad, Iraq on April 30, 2018 for joining and supporting ISIS.

penalties on individuals who seek to aid and support these heinous terrorist organizations would deter other individuals from joining their ranks.

The need for specific deterrence is also present. The Defendant actively fought in support of a terrorist organization for years and helped maintain the ISIS caliphate. Given the nature of the Defendant's conduct and his history, until the Defendant renounces his Islamic extremist beliefs, the Defendant will continue to pose a significant danger to the public. A 60-month term of imprisonment will provide the Defendant sufficient time to learn from his mistakes and adapt himself to becoming a positive and contributing member of society.

## CONCLUSION

Based on the all of the evidence in the record, including the Defendant's factual proffer, the Court should deny all of the Defendant's objections and sentence the Defendant to a 60-month term of imprisonment, as suggested by the Defendant's sentencing guidelines.

    Respectfully submitted,

    JUAN ANTONIO GONZALEZ
    ACTING UNITED STATES ATTORNEY

By:   s/ *Jonathan D. Stratton*
      JONATHAN D. STRATTON, AUSA
      Florida Bar No. 93075
      99 Northeast Fourth Street, 6th Floor
      Miami, Florida 33132-2111
      Phone: (305)961-9151
      Fax: (305) 530-7976

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct of the foregoing was filed with the Clerk of the Court using CM/ECF.

/s/ *Jonathan D. Stratton*
Jonathan D. Stratton, AUSA